**BATJET, INC.; Melrose Nursing Center; Eivis C. Jones, Individually; Rhonda Alexander, R.N., Individually; and Cassie H. Scott, L.V.N., Individually, Appellants,**

**v.**

**Debra JACKSON, Individually, as Representative of all Wrongful Death Beneficiaries, and as Representative and Legal Heir of the Estate of Bernice Janette Greer, Deceased, Appellee.**

No. 06–04–00071–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 17, 2005.

Decided March 30, 2005.

Julie A. Machal–Fulks, Robert J. Scott, Scott & Scott, LLP, Dallas, for appellants.

Jason N. Young, Henry P. Giessel, David Marks, The Marks Firm, Houston, David Hill, Wellborn, Houston, et al, Henderson, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

This appeal concerns whether a Rule 11 settlement agreement exists among the parties. The trial court decided that it did and ordered Batjet, Inc., Melrose Nursing Center, Eivis C. Jones, individually, Rhonda Alexander, R.N., individually, and Cassie H. Scott, L.V.N., individually, to pay under its terms. We affirm the judgment of the trial court.

### A. Factual and Procedural Background

This suit was originally brought as a malpractice lawsuit. Debra Jackson, individually, and as representative of all wrongful death beneficiaries, and as representative and legal heir of the estate of Bernice Janette Greer, deceased, sued Batjet, Inc., et al., for damages allegedly caused by their negligent care of Greer, who died while in their care. The parties engaged in settlement negotiations, and the entire question before this Court is whether the trial court correctly decided that the negotiations were brought to an enforceable conclusion. The trial court issued an order on Jackson's motion for enforcement and for summary judgment, and directed all defendants to pay $75,000.00 in the form outlined by the agreement (secured by a lien on real property), and $1,500.00 in costs incurred because of the breach of the agreement, and directed Jackson to dismiss the lawsuit with prejudice on receipt of the initial portion of the payment and costs.

Jackson sued the nursing home's corporate entity and some of its employees in July 2001. In May 2003, they began discussing settlement, and a series of letters were exchanged. Robert Scott, named counsel for all defendants (appellants) sent a letter outlining his proposal for settlement terms. Other letters were exchanged, each of which altered terms—but only regarding the timing and distribution of the payments. Finally, on June 23,

2003, a document was signed that Jackson contends constitutes a Rule 11 agreement.[1]

On September 4, 2003, counsel for defendants sent a letter to Jackson's counsel stating that a formal and detailed settlement and release agreement was necessary before they would actually pay any money. The record indicates that counsel for Jackson sent several lengthy versions of a release to defendants and that they refused to sign any of them, and Jackson then moved for enforcement of the Rule 11 agreement.

## B. Points of Error

Appellants complain that (1) the court's ruling is error because the agreement is not enforceable, because the agreement does not state which parties would be released, when they would be released, or the scope of the release; (2) the court should not have stated they were liable because the June 23 letter was ambiguous about which "client" was bound by the agreement, and (3) there are issues of fact about whether the individual defendants intended to be bound by the June 23 letter agreement.

## C. Use of Summary Judgment

■ We first note that the use of a motion for summary judgment in the same lawsuit, where the trial court has jurisdiction over that action, is an appropriate means to use to obtain this type of relief. A written settlement agreement may be enforced though one party withdraws consent before judgment is rendered on the agreement. *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex.1996). Where consent is lacking, however, a court may not render an agreed judgment on the settlement agreement, but may enforce it only as a written contract. *Id.* The party seeking enforcement must pursue a separate breach of contract claim, which is subject to the normal rules of pleading and proof. *Id.*

■ Where the settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should be asserted in that court under the original cause number, such as through an amended pleading or counterclaim. *See id.; see also Padilla v. LaFrance*, 907 S.W.2d 454 (Tex.1995). The settlement agreement alone is insufficient to provide a basis for judgment because it would deprive a party of the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. *See Cadle Co. v. Castle*, 913 S.W.2d 627, 632 (Tex.App.-Dallas 1995, writ denied). Here, an appropriate motion for summary judgment was presented to enforce the agreement giving appellants the right to meet the allegations in the motion.

A motion for summary judgment is properly granted if the movant establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377 (Tex.App.-Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judg-

---

1. Tex.R. Civ. P. 11 provides as follows:

    Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

ment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990).

## D. Analysis

(1) **Is the agreement unenforceable due to failure to specify the parties to be released, when the parties would be released, and the scope of the release?**

■ Jackson argued in her motion for summary judgment that the June 23 letter constituted a Rule 11 agreement and also filed, in support of that motion, the preceding offers and responses that led to that letter. The June 23, 2003, letter states:

> Responsive to your letter of June 13, 2003, my client has authorized me to settle this case as follows:
>
> 1) One (1) cash payment of $45,000; and
>
> 2) Three (3) cash payments of $10,000 each, payable January 1, 2004, January 1, 2005 & January 1, 2006. These three (3) annual payments are secured by a first lien on the annex property located at 1501 West 29th Street, Tyler, TX.
>
> If this arrangement is acceptable to your client, please sign below and fax it back to me. If you have any questions or need to discuss this further, please contact me.
>
> Very truly yours,
>
> Henry P. Giessel

The letter was returned signed by Robert J. Scott, Scott & Scott, L.L.P. as "Attorney for Defendants."

The appellants contend that the June 23 letter, as read alone or all letters as read together, do not contain all the required elements of the contract. We disagree.

■ It is not required that all of the terms be contained within a single document. In the leading case of *Padilla,* 907 S.W.2d at 461, for example, the court found that three letters as read together were the agreement and contained all material terms of that agreement. Similarly, in this case, we have several different letters that were placed in the record. In the May 23 letter, appellants' counsel wrote to Jackson's counsel, offering to settle by paying a total of $75,000.00 in return for dismissal of pending litigation with prejudice and a release of all parties (named individually) from liability. The May 23 letter makes it clear that all defendants are to be released from liability in the settlement of this claim. In all of the following correspondence, although settlement was the obvious purpose, the proposed releases were never again explicitly mentioned. The only matter under dispute was the payment. As previously noted, even that argument was not over the amount, but only the way the payment was to be structured.

Looking at the documents as a group, instead of at the June 23 letter in isolation, it is clear that the plaintiffs agreed to release all defendants from their claims against them in return for a specified amount of money, to be paid in specified installments. The only thing that is not expressly set out in that letter is a date for either the transfer of the money or the release.

■ The law of contracts applies to Rule 11 settlement agreements. *Id.* at 460; *Ronin v. Lerner,* 7 S.W.3d 883, 886 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Under contract law, as explicitly applied in cases involving the settlement of lawsuits, it is clear that, if a contract does not state a specific time for performance, a reasonable one will be implied. *CherCo Props., Inc. v. Law, Snakard & Gambill,*

*P.C.*, 985 S.W.2d 262, 266 (Tex.App.-Fort Worth 1999, no pet.); *see Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944).

The same scenario as exists in this case was addressed in *Atlantic Lloyds Insurance Co. v. Butler*, 137 S.W.3d 199 (Tex. App.-Houston [1st Dist.] 2004, pets. denied [2 pets.]). In that case, the appellate court recognized that the intent was obviously to settle a case, that there was no reasonable question the attorneys for all parties were aware of the identities of the plaintiffs and the nature of their claims, and that contemporaneous performance was implied by the agreement—and rendered summary judgment so ordering. *Id.* at 212.

(2) **Was the agreement ambiguous concerning the parties bound?**

(3) **Do the individual defendants' affidavits create material issues of fact?**

█ Counsel for the appellants signed the June 23 letter as "Attorney for Defendants." However, in the body of the agreement, the term "client" is used in the singular rather than the plural. Appellants argue that, even though the agreement was signed by counsel for all the defendants, the individual defendants agreed only to $75,000.00 being paid by their employer. This argument is supported by directing us to the affidavits of the individuals, in which they stated they had approved a settlement of $75,000.00 payable by their employer, not individually. It is also argued that counsel's use of the word "client" instead of "clients" in the June 13 letter is necessarily dispositive because it reflects that only one of the clients agreed to settle.

█ Enforceable Rule 11 agreements may be signed by counsel, and the signature of the individual parties to the

suit is not required. *See W. Beach Marine, Ltd. v. Erdeljac*, 94 S.W.3d 248, 255 (Tex.App.-Austin 2002, no pet.). Jackson argues that, in light of the pleadings in the lawsuit, the fact that the same counsel represented all defendants, and the otherwise complete consistency of the prior (and later) communications as covering all defendants, and their agreement to release all defendants, the omission of the "s" was nothing more than a typographical error. Further, the affidavits of the individual defendants do not raise the issue of a failure to agree to settle the suit, but only that their employer was to pay the settlement. The issue of allocation is one to be sorted out among the various defendants, and not an essential element of the contract as would require the agreement of the plaintiff. Reading the documents together, the agreed-on payment serves to require the release of all defendants, not just one.

It is clear from appellants' summary judgment response, as well as the affidavits of the individuals involved, that they all agreed to the settlement, and also that they agreed among themselves how the payment money would be allocated. Their sole complaint is that no document approved by the plaintiffs contains that information.

The question of how the monies with which the settlement was to be paid would be allocated among the various defendants is not a matter requiring agreement of the plaintiffs. In the absence of some special circumstance that might cause this to be of importance, any agreement they might (or might not) reach is irrelevant to the plaintiff—the source of the actual money paid was not a concern of the plaintiff. It is not a subject that either must or necessarily should be included in the settlement agreement, and is not an essential element of the agreement. *See Cantu v. Moore*, 90

S.W.3d 821, 825 (Tex.App.-San Antonio 2002, pet. denied); *Ronin,* 7 S.W.3d 883. The evidence establishes that Jackson is entitled to summary judgment.

We affirm the judgment.