In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00182-CV**

_____

**SHERMAN MOORE, INDIVIDUALLY AND D/B/A
S&S SECURITY INC. AND GEORGE ADAMS, Appellants**

**V.**

**PATRIOT SECURITY INC., Appellee**

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-191,488**

**MEMORANDUM OPINION**

Appellants Sherman Moore ("Moore"), S&S Security Inc. ("S&S"), and George Adams ("Adams") filed this appeal complaining of a summary judgment rendered in favor of Appellee Patriot Security Inc. ("Patriot" or "Appellee"). We affirm.

## Background

The underlying lawsuit was filed in 2011 by Patriot against Moore, S&S, and Adams (collectively "Defendants"). Patriot alleged claims for tortious interference with contract and misappropriation of trade secrets. A jury trial commenced on December 8, 2015. After testimony by Adams, counsel for Patriot advised the court as follows:

> The parties now announce that we've settled this case, the Patriot, Inc.; Cause No. A-191,488 against S & S Investigation and Security, Inc., and Sherman Moore individually, and George Adams.
> I will try to recite it as best I remember, and these two able lawyers will jump in when my memory fails me. It will -- that settlement will include $100,000, 50,000 of which is due this Friday, . . . [t]he 11th[.]
>
> . . . .
>
> And, then, another $50,000 will be paid 60 days from today's date, which will put it -- pick a date. . . . February 15th -- . . . [T]he money will be delivered to my office. That will be made payable to Patriot Security, Inc.
> Also, in addition to the monetary payment, the defendants have agreed to enter into a noncompete, confidentiality agreement, nonsolicitation of employees; but the noncompete applies to Jefferson and Orange County.
>
> . . . .
>
> They have -- whatever that number is, they've agreed not to solicit, nor accept, or advertise for security business, which is the . . . [a]rmed business [for] [t]hirty-six months[.]
>
> . . . .

> There will be a confidentiality provision placed in that document. There will be a liquidated damage provision added, for $150,000, that -- if there is a breach of the agreement.

Counsel for Moore and S&S advised the court that

> Defendant S & S Investigations and Security has agreed to provide, through their accounting firm or accountant, the financial documents or records that prove that, over this 36-month period, that there has been no new accumulation of Jefferson County or Orange County businesses.

After some discussion regarding businesses with offices or operations in multiple counties, Mr. Moore stated he would make a list of "11 to 13 clients" in Jefferson and Orange Counties to which the noncompete agreement would apply and told the court "we're not gonna put labor in Orange County or Jefferson County." The court stated "I accept the tendered offer and I'll await your order and it will conform with what you said and we'll have the record and, if it conforms, I'll sign it." The proceedings then concluded.

At some point following the trial, Moore obtained new counsel, and on December 14, 2015, Moore's new attorney filed a Motion for Mistrial and Notice of Rescission. In the motion for mistrial and notice of rescission, Moore argued that the attorneys had an exchange that was "more of a discussion with the court as opposed to any fashion of agreement." In the notice of rescission, Moore alleged that "there is not now nor has there ever been a full and final agreement between all the parties

3

disposing of any and all issues" and due to "missing terms[]" and "missing resolutions for pending factual disputes amongst the litigants[,]" Moore stated that he was rescinding any purported agreements or obligations imposed in the course of the judicial proceedings.

On December 18, 2015, Patriot filed a Fifth Amended Original Petition. The amended petition alleged in part as follows:

> [] On Friday, December 11, 2015, before 9:28 a.m., Defendants requested that Plaintiff allow Defendants to wire TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) to the trust (IOLTA) account of [the] Bernsen Law Firm before noon of the same day and to wire the additional TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) to the Bernsen Law Firm trust account on Tuesday, December 15, 2015. Plaintiff agreed to Defendants['] request and at 9:20 a.m. sent wiring instructions to Bernsen Law Firm's IOLTA account.
> [] No monies have been received to date from Defendants.

The amended petition also alleged that, despite the fact that Defendants had agreed to provide a client list of "11 to 13 clients" in Jefferson and Orange Counties, the Defendants actually provided a "purported list of 39+ clients" in Jefferson and Orange Counties. The amended petition stated a claim for breach of contract or, in the alternative, specific performance of the contract, and sought damages of $250,000 plus attorney fees and costs.

On February 2, 2016, the court held a hearing on Moore's motion for mistrial. Counsel for Moore argued that the discussion on the record on December 8, 2015,

4

did not reflect an agreement as to who among the Defendants was to make a payment. According to Moore's counsel, there was no agreement, no entry of judgment, and "basically [it] is our right to rescind or back out of any type of an agreement until there is, in fact, a final judgment or rendition from the Court." Counsel for Patriot explained that Patriot had relied upon the representations of Defendants and their previous counsel to settle the case and that the parties had arrived at an agreement. The court denied the motion for mistrial.

On March 14, 2016, Patriot filed a traditional motion for summary judgment on its claim for breach of contract, attaching affidavits, an excerpt of proceedings, and various other exhibits. According to the motion, the parties had made a settlement agreement whereby, in exchange for Patriot dismissing the jury and eventually releasing Defendants from the lawsuit, Defendants would pay Patriot $100,000 in cash and agreed to a three-year non-compete provision. According to the motion for summary judgment, the Defendants also agreed on the record to provide a list of "11 to 13" clients that Defendants would keep and that would be exempt from the noncompetition agreement, and then instead sent Patriot a list of thirty-nine clients, some of whom Patriot alleged were already clients of Patriot. Patriot summarized its arguments as follows:

> In short, Defendants made Plaintiff an offer which was promptly accepted in exchange for the dismissal of the jury and eventual

5

dismissal of the suit upon Defendants performance of the agreement. Defendants quickly sough[t] to alter the agreement with Plaintiff's approval, then eventually expanded the scope of the non-compete without Plaintiff's approval and in bad faith. Moreover, Defendants now refuse to pay the agreed sum of money all together. Finally, Defendants filed an official notice of an intent to continue to breach the agreement, as such, Defendants are liable to Plaintiff for the amount of the original settlement amount, the liquidated damages, attorney's fees, and strict enforcement of the non-compete agreement.

The motion alleged that Defendants breached the settlement agreement in two respects: they produced a list of clients far in excess of the agreed-upon eleven-to-thirteen number, and they did not make the agreed-upon payments. Patriot further argued in the motion

[] Per the Settlement Agreement, Defendants [are] owe[d] $150,000 in liquidated damages due to their breach. Additionally, Defendants still owe Plaintiff the initial $100,000 from the settlement agreement as well. Furthermore, Plaintiff has incurred additional attorney fees to enforce the terms of the Settlement Agreement. These costs and damages exist solely because of Defendants' breach.

. . . .

[] Defendants have breached the settlement agreement in this case and are now liable for $250,000 in damages and attorney fees of $54,217.50 and expenses of $2,946.70, prejudgment interest from the date of the Breach of Contract (Dec. 11, 2015), costs of court and post judgment interest.

On March 23, 2016, Adams filed a response to the motion for summary judgment, asserting that he "was never a party to any contractual agreement whereby he promised to pay any sum of money to the Plaintiff[]" and that the recitation before

6

the trial court imposed no specific action or inaction on Adams. Adams's response was supported by an excerpt of the transcript of the December 8, 2015 proceeding and Adams's affidavit.

On April 2, 2016, Moore and S&S filed a response to the motion for summary judgment. Therein, Moore and S&S cited to no legal authority, but argued that numerous fact issues existed, including the existence and terms of the alleged settlement agreement as well as whether the court had accepted and implemented the agreement "proposed" in court on December 8, 2015. Moore and S&S also argued that no consideration supported the alleged agreement; that Patriot was attempting to obtain a double recovery by pursuing a claim for breach of the alleged settlement agreement as well as the original lawsuit; that liquidated damages were available only for a breach of the noncompete or confidentiality provisions and that a liquidated damages award would preclude an award of attorney's fees; that the alleged agreement lacked sufficient specificity and was vague and ambiguous; that an order dismissing a prior lawsuit functions as res judicata as to Patriot's current claims; and that there had been inadequate time for discovery. In support of their response, Moore and S&S attached affidavits of Sherman Moore and Sheila Moore, transcripts of the December 8, 2015 proceeding, notices of depositions and emails pertaining thereto, a 2011 order dismissing with prejudice as to a lawsuit between

Patriot and Adams, and an order quashing depositions. The affidavit by Sherman Moore alleges, in relevant part, that the settlement agreement alleged by Patriot was vague and incomplete.

On April 12, 2016, the court held a hearing on Patriot's motion for summary judgment. Patriot argued at the hearing that the parties had a binding settlement agreement announced in open court and during the trial, that the Defendants failed to make the scheduled payments, and submitted a bad faith list of clients that far exceeded the parties' agreement, and that Patriot was entitled to $100,000 plus $150,000 for liquidated damages for breach of the agreement, and attorney's fees.

Moore and S&S argued at the hearing that there had not yet been an opportunity to conduct discovery on the Fifth Amended Petition, but did not make a request for a continuance. Moore and S&S also argued that there had been no "meeting of the minds" on a settlement agreement and that Patriot had not established all elements for an enforceable agreement, specifically which party was to pay and the companies to which the non-compete provision would apply. Counsel for Moore and S&S also argued that if Patriot was entitled to anything, it should be limited to recovery of $150,000 in liquidated damages and it should not also be allowed to recover attorney's fees and $100,000.

The trial court stated "it was clear to the Court that [Mr. Moore] assumed the mantle of responsibility for paying this[]" and

> . . . I know there was an agreement. I know there was a meeting of the minds. I was here. I watched [Mr. Moore] respond to this and make his own assertions of what he thought the agreement was between him and [a representative of Patriot]. And, so, there is a meeting of the minds.
>
> . . . .
>
> . . . I'm going to grant the motion for summary judgment. I think they're liable for $100,000 in the original contract amount; $150,000 liquidated damages; $54,217.50 for attorneys' fees; and expenses of $2,946.70.

On May 11, 2016, the court entered a Final Summary Judgment in favor of Patriot, awarding actual damages of $250,000, and $57,164.20 in attorney's fees and expenses, as well as interest and costs. The judgment also ordered that Patriot's recovery be from Moore, S&S, and Adams "individually, jointly and severally[.]" The judgment did not grant Patriot's request for injunctive relief to enforce the noncompete and expressly "finally dispose[d] of all claims and all parties[.]"

On May 25, 2016, Moore and S&S filed a motion for new trial or to reform the judgment, arguing that there are "numerous contested fact issues[,]" the judgment failed to limit damages to liquidated damages, and the judgment lacked evidentiary support. The motion included no exhibits, affidavits, or other

attachments. Also on or about May 25, 2016, Moore and S&S filed their notice of appeal.

On May 31, 2016, Adams filed a motion for new trial that argued Patriot's summary judgment evidence included "no proposal to include George Adams as being jointly responsible for $250,000 in damages." Adams's motion attached an excerpt of the trial proceedings concerning settlement. Also on May 31, 2016, Adams filed his notice of appeal. On June 14, 2016, the court held a hearing on the motions for new trial, and on July 14, 2016, the court entered a Reformed Final Judgment, reforming the original summary judgment so that Patriot is to recover individually, jointly, and severally from Moore and S&S and orders that Patriot "take nothing from Defendant George Adams."

On July 20, 2016, Moore and S&S filed a Request for Findings of Fact and Conclusions of Law. Patriot filed a response on August 5, 2016. The trial court denied Moore and S&S's request on August 9, 2016.

On August 5, 2016, Moore and S&S filed another motion for new trial. Therein, Moore and S&S challenged the sufficiency of the evidence for summary judgment, alleged the evidence was disputed and that fact issues existed, argued that no evidence supported attorney's fees, and challenged the award of both attorney's

10

fees and liquidated damages. On August 5, 2016, Moore and S&S filed an amended notice of appeal.

On August 11, 2016, Patriot filed a Notice of Cross-Appeal claiming the Reformed Final Judgment is in error for omitting recovery from George Adams. Thereafter, on February 13, 2017, Patriot filed an unopposed motion to dismiss its cross-appeal.

The final judgment, as reformed, was a "take nothing" judgment as to defendant George Adams, which renders George Adams's appeal moot. Therefore, we dismiss George Adams's appeal for lack of jurisdiction. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (explaining that a mooted appeal presents no live controversy, such that a court has no jurisdiction to render an opinion thereon). We also grant Appellee's unopposed motion to dismiss its cross-appeal. Therefore, we confine our analysis to the issues raised by Moore and S&S on appeal. *See* Tex. R. App. P. 47.1

## Issues

In three issues, appellants Moore and S&S argue that the trial court erred in granting summary judgment. In their first issue, Moore and S&S argue that the Recitation failed to include all the necessary elements of an agreement to support the judgment. In a second issue, they argue that there were disputed fact issues that

11

precluded summary judgment. And in a third issue, Moore and S&S argue that the trial court's judgment was in error because the Recitation provides no basis for the award of liquidated damages. In Appellants' Reply Brief, Moore and S&S re-urged the arguments in their opening brief.

Standard of Review

<u>Summary Judgment</u>

We conduct a de novo review of an order granting a traditional motion for summary judgment. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, we deem as true all evidence that is favorable to the nonmovant, indulge every reasonable inference to be drawn from the evidence, and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Where, as here, a trial court does not specify the grounds on which it granted the motion for summary judgment, we must affirm if any of the grounds asserted in the motion are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on the issues set forth in the motion. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

On a traditional motion for summary judgment, a nonmovant need not file an answer or response to a motion for summary judgment in order to challenge the sufficiency of the evidence relied on by the movant. *See Fantastic Homes, Inc. v. Combs*, 596 S.W.2d 502, 502 (Tex. 1979) (citing *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979)). We may consider only the grounds expressly set forth in the motion for summary judgment and the issues of fact expressly set forth in the response thereto. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341-43 (Tex. 1993). However, the nonmovant's failure to respond cannot supply by default the summary judgment proof necessary to establish the movant's entitlement to judgment. *Id.* at 342.

Contracts

Contract law governs settlement agreements made in open court pursuant to Rule 11. *See Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)). Whether an agreement is legally enforceable is a question of law. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Gaede v. SK Investments, Inc.*, 38 S.W.3d 753, 757-58 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("Whether an agreement constitutes a valid contract is generally a legal determination for the

13

court. . . . However, whether parties *intended* to make a contractual agreement is usually a fact issue for the jury."). The issue of whether a Rule 11 settlement agreement fails for lack of essential terms is "a question of law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement." *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Applicable Law

To prevail on a breach of contract claim, a claimant must prove (1) the existence of a valid contract, (2) the claimant's performance or tender of performance, (3) breach by the other party to the contract, and (4) the claimant's damages resulting from the breach. *See Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Sullivan v. Smith*, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied). Attorney's fees may be recoverable, in addition to the amount of a valid claim and costs, by a party that prevails on a claim for breach of contract. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (West 2015).

A Rule 11 agreement made in open court and entered of record is enforceable provided the contract terms that are "material and essential" to the parties' agreement are certain. *See* Tex. R. Civ. P. 11; *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Radford v. McNeny*, 104 S.W.2d 472, 475 (Tex. 1937)); *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("The material terms of the contract must be agreed upon before a court can enforce the contract."). Material and essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. *See Fischer*, 479 S.W.3d at 237 (citing *Neeley v. Bankers Tr. Co.*, 757 F.2d 621, 628 (5th Cir. 1985); *Stergiou*, 438 S.W.3d at 744; *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). A settlement agreement may still be enforceable even if some of the terms remain to be negotiated. *See Stergiou*, 438 S.W.3d at 747-48, 752; *W. Beach Marina Ltd. v. Erdeljac*, 94 S.W.3d 248, 257 (Tex. App.—Austin 2002, no pet.) (citing *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972) ("[P]arties may agree upon some of the terms of a contract, and understand them to be an agreement, and yet leave other portions of an agreement to be made later."); *Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied).

Analysis

We first examine whether the movant in the motion for summary judgment—Patriot—established that it was entitled to judgment as a matter of law on the issues set forth in the motion. *See* Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848. Patriot's motion for summary judgment alleged that during trial Moore and S&S reached a settlement agreement to pay Patriot and end the litigation. According to Patriot, under the terms of the agreement as announced on the record at trial, Moore and S&S agreed to pay Patriot $50,000 on Friday, December 11, 2015, and $50,000 on February 15, 2016, as well as adhere to a three-year non-compete agreement. Patriot argued that the trial court and the parties accepted the settlement and the proceedings concluded and the jury was dismissed. Patriot further argued that neither Moore nor S&S made the scheduled payments to Patriot. Patriot supported its motion for summary judgment with exhibits and affidavits, including portions of the transcript from the December 8, 2015 trial proceedings. Specifically, one section of the hearing transcript included the announcement by the parties that "[t]here will be a liquidated damage provision added, for $150,000, that -- if there is a breach of the agreement."

On the record before us, we conclude that Patriot established, through its motion and summary judgment evidence, that an enforceable settlement agreement

16

existed and that Patriot was entitled to judgment as a matter of law on its claim that Moore and S&S breached that agreement based upon the failure of the Defendants to make the scheduled payments. *See Bank of Tex.*, 276 S.W.3d at 677; *Case Corp.*, 184 S.W.3d at 769-70. Accordingly, the trial court did not err in concluding that Patriot met its initial burden of proof to establish a breach of the settlement agreement. *See Fielding*, 289 S.W.3d at 848.

We note that although Moore and S&S's response to the motion for summary judgment made arguments about the lack of a "meeting of the minds" or allegations that certain damages are not recoverable, it included no citations to any legal authority. In addition, Moore and S&S's brief on appeal includes few citations to legal authority, and it does not cite to the record for the basis of its arguments or establish where such arguments were preserved in a written response to the motion for summary judgment or exhibits thereto. *See* Tex. R. App. P. 38.1(i) (an appellate brief must cite to relevant legal authority and to the record). Assuming without deciding that Moore and S&S have sufficiently preserved error for appeal,[1] we

---

[1] To preserve error for appellate review requires the complaining party to show that it presented its complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request. *See* Tex. R. App. P. 33.1; *Burbage v. Burbage*, 447 S.W.3d 249, 257 (Tex. 2014). A party may nevertheless raise an argument regarding the legal or factual sufficiency of the evidence in a nonjury case for the first time on appeal in the complaining party's brief. *See* Tex. R. App. P. 33.1(d).

conclude that the trial court did not err in granting the summary judgment. Patriot was entitled to summary judgment as a matter of law because Moore and S&S breached the settlement agreement by failing to make the $100,000 payments. *See Fielding*, 289 S.W.3d at 848. Moore and S&S failed to raise a material fact issue sufficient to defeat the summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). At most, the Sherman Moore affidavit provided evidence that the parties anticipated further discussion or negotiation on the list of clients that would not be part of the noncompetition agreement. *See Fischer*, 479 S.W.3d at 243-44 (a settlement agreement is not unenforceable because the parties anticipate future negotiations provided the agreement contains all material terms) (citing *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 417 (Tex. 2013)); *Stergiou*, 438 S.W.3d at 744-51; *Erdeljac*, 94 S.W.3d at 259 (to be enforceable, an agreement must contain sufficient terms to determine the parties' obligations but is not required to address all possible terms and issues). A settlement agreement, such as the one here, is enforceable where it includes material terms, such as an agreement to pay an amount for settlement of claims, and the agreement is made in open court and it is

fully supported by the reporter's transcription.[2] *See* Tex. R. Civ. P. 11; *Padilla*, 907 S.W.2d at 460-61.

As to damages, the reporter's record of the December 8, 2015 proceeding reflects that the parties agreed to liquidated damages of $150,000 if the "agreement" was breached.

Patriot's motion for summary judgment argued that it had incurred attorney's fees and costs in the amount of $57,164.20 as a result of the Defendants' breach of the settlement agreement. The motion was supported by an affidavit of its attorney that asserted a claim for attorney's fees under section 38.001(8) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2015) (a party that prevails on an underlying claim for breach of contract may recover attorney's fees); *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*,

---

[2] Moore and S&S argued without citation to any authority that any settlement agreement made in court on December 8, 2015, was not enforceable because it was a "proposed agreement [that] was never accepted and implemented by the Court." We note that under Rule 11, a settlement agreement made by the parties in open court need not be otherwise reduced to writing or entered into a judgment to be enforceable. *See* Tex. R. Civ. P. 11; *McLendon v. McLendon*, 847 S.W.2d 601, 606-07 (Tex. App.—Dallas 1992, writ denied) (an oral agreement that is read into the record in open court, supported by the court reporter's transcription and the parties' sworn testimony, satisfies Rule 11); *see also Ronin v. Lerner*, 7 S.W.3d 883, 886-88 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (finding a settlement agreement made in open court was enforceable under Rule 11 where supported by the court reporter's transcripts).

295 S.W.3d 650, 653 (Tex. 2009). Patriot also submitted a billing statement of its attorney for time spent and costs incurred from December 13, 2015 through March 11, 2016, totaling $57,164.20. Moore and S&S submitted no contrary evidence to create a fact issue on the matter of attorney's fees and costs, nor did they challenge the reasonableness of the fees.

Based upon the appellate record now before us, we cannot say the trial court erred in concluding that there were no material issues of fact and that Patriot was entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797-98 (Tex. 2008). We overrule all issues presented by Moore and S&S.

Having overruled all of Moore and S&S's issues, and having granted Appellee's unopposed motion to dismiss its cross-appeal, we affirm the trial court's Reformed Final Judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 4, 2018
Opinion Delivered March 8, 2018

Before Kreger, Horton, and Johnson, JJ.